Cudd, Respondent, vs. Larson, Appellant.

*February 7—February 24, 1903.*

*Highways: Steam engines: Duty of operator when teams approach.*

Sec. 1347*b*, Stats. 1898, as amended by ch. 197, Laws of 1899, makes it the duty of any person propelling a steam engine along any highway to signal and stop it *"when it is approached* within fifteen rods in either direction by any team or any person riding or driving any animal and *desiring to pass* such engine," and to render all proper assistance within his power "to enable such team or persons *to pass* in safety." *Held,* that it is only when the team, or the person riding or driving the animal, is moving toward the engine with the desire of passing it, that the duty to signal and stop the engine arises,—not when the engine approaches a team standing still in the road.

Appeal from a judgment of the circuit court for Pierce county: E. W. Helms, Circuit Judge. *Reversed.*

This is an action to recover damages for injuries sustained by the plaintiff's team in a runaway alleged to have been caused by the failure of the defendant to comply with sec. 1347*b,* Stats. 1898, as amended by ch. 197, Laws of 1899. The answer consists of admission, denials, and counter allegations as to the care of the defendant and the fault and contributory negligence of the plaintiff.

The circumstances under which the injury occurred are mostly undisputed, and to the effect that June 1, 1901, the plaintiff was working with his team of horses, six years of age, and a common slush or hand scraper, on the public highway running north and south and known as the Seeley road; that he was assisted by one Guest; that a few rods north of where the plaintiff was so at work there was an east and west road, running at right angles with the Seeley road; that one mile west of the junction of the two roads was the village of Ellsworth; that the work in which the plaintiff was so engaged at the time consisted in scraping dirt from a point

about four rods south of the intersection of the two roads, and on the westerly side of the Seeley road, southward into the center of that road to a distance of from five to ten rods from where they got the dirt. While the plaintiff was so at work on the afternoon of the day mentioned, the defendant, with his sons and a traction engine weighing more than seven tons, being propelled by its own steam power, came easterly from Ellsworth to the Seeley road, and then turned south thereon. The defendant first saw the plaintiff's team when he was about twelve rods from the corner, but could not see it all the time until he turned the corner with his engine to go south on the Seeley road. He kept his eye on the team and the plaintiff from that time until the team ran away.

At the close of the trial the jury returned a verdict in favor of the plaintiff, and assessed his damages at $316.85. From the judgment entered thereon accordingly the defendant appeals.

For the appellant there was a brief by *Walter C. Owen* and *J. W. Hancock,* and oral argument by *Mr. Owen.*

For the respondent the cause was submitted on the brief of *John E. Foley* and *F. M. White.*

CASSODAY, C. J. This case turns upon the construction to be given to the statute which declares that:

"The owner or owners of any steam engine or any person who propels or causes such an engine to be propelled or otherwise moved or used along or upon any public highway in any town shall be liable for all damages that may be caused thereby to such highway or any sluiceway, culvert or bridge thereon, or to any person or corporation by reason of the propelling or otherwise moving or using the same upon any such highway in the following cases: . . . (4) When any such engine shall be in such highway, whether standing or moving, and the person in charge shall not signal and stop it *when it is approached* within fifteen rods in either direction by any team or any person riding or driving any animal *and desiring to pass such engine,* or when the person or persons

in charge of such engine shall neglect or refuse to render all proper assistance within their power *to enable such team or persons to pass in safety."*          Sec. 1347*b,* Stats. 1898, as amended by ch. 197, Laws of 1899.

The plaintiff claims that under the circumstances mentioned the statute imposed three duties on the defendant: (1) To signal the plaintiff when the engine had approached to within fifteen rods of him and his team; (2) to stop his engine at the same time he was so required to give the signal; (3) to render all proper assistance within his power to enable the plaintiff and his team to pass the engine in safety. It is undisputed that the defendant did not stop the engine until he was within a short distance of the plaintiff's team— two and one half or four rods from it, and opposite or nearly opposite. The court appears to have adopted the plaintiff's construction of the statute, and so charged the jury, upon such undisputed evidence, that the defendant was "liable to the plaintiff for all injuries done to the plaintiff's team and harness that were proximately caused by the frightening of said team by said engine, including amounts which plaintiff has necessarily expended or become liable for reasonable doctoring and caring for the injuries to said horses so caused, unless plaintiff was guilty of contributory negligence."

If the statute requires the owner of such engine to stop and give such signal whenever a team happens to be within fifteen rods of the engine, regardless of the direction in which it is going, or even if it is standing still, then the portion of the charge quoted is justified. Possibly such may have been the intention of the legislature, but no such intention is expressed in the statute. On the contrary, the person in charge of the engine is only required to give the signal when the engine "is *approached* within fifteen rods . . . by any team or any person riding or driving any animal, and *desiring to pass* such engine," and the requirement "to render all proper assistance" is "to enable such team or persons *to pass in*

*safety.*" The plain meaning of the statute is that the team or person riding or driving the animal is to be moving toward the engine with the desire of passing it before the person in charge of the engine is required to stop it and give the signal. The evidence of the defendant is to the effect that when he turned onto the Seeley road the plaintiff's "team was standing still on the west side of the road, facing directly to the south," and the plaintiff was standing on the east side of the team, holding the lines and looking toward the engine; that the defendant kept his eye on the team as he approached it with his engine; that the team stood still until the engine got opposite and within two and one half or four rods of the team, when the horses started. Such being the construction of the statute and the evidence on the part of the defendant, it is manifest that the portion of the charge quoted was erroneous.

2. The evidence on the part of the plaintiff is somewhat different; but we cannot say from the evidence, as a matter of law, that the engine was not being approached by the team, with the view of passing it, at the time the horses took fright, and hence that the motion for a nonsuit was properly denied.

3. Nor can we say that the court improperly admitted evidence as to what the team did after it ran into the yard.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for a new trial.